*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JONES/GILKES, Minors.

UNPUBLISHED
February 11, 2020

No. 349555
Oakland Circuit Court
Family Division
LC No. 2017-850241-NA

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

PER CURIAM.

Respondent appeals as of the right the trial court's order terminating her parental rights to her minor children KAJ and BNG pursuant to MCL 712A.19b(3)(c)(*i*), (182 days or more have passed since initial disposition and there is no reasonable likelihood that conditions will be rectified in a reasonable time), (g), (the parent fails to provide proper care or custody for the child), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

## I. FACTS

On January 25, 2017, the Wixom police received a report of multiple gun shots fired from the home occupied by respondent and her children. When police arrived at the home, respondent refused to open the door. A five-hour police standoff occurred during which a special task force of local law enforcement was assembled, a flash grenade was thrown into the home, and a forced entry occurred. Respondent, Jermaine Dion Webb, and another man were in the home. Upon entry, the police discovered then three-year-old KAJ and four-month old BNG were also present. Webb is the biological father of BNG, and respondent knew that he was on probation and in illegal possession of a firearm. After respondent was taken into police custody, Oakland County Department of Health and Human Services (DHHS) filed a petition to assume jurisdiction over the children and place the children with a suitable relative.

Respondent was charged with a misdemeanor offense of resisting or obstructing a police officer, pleaded guilty to the offense, and was placed on probation. Pursuant to the parent-agency agreement, she was required to participate in a psychological evaluation, individual therapy, parenting classes, obtain and maintain stable housing, maintain employment, maintain contact with DHHS, and participate in visitation with her children. After failing to appear for two scheduled psychological evaluations, respondent appeared on June 30, 2017. She acknowledged that she

-1-

endangered her children by having Webb in her apartment and that she did not have an emotional support system. When questioned how she coped with problems, respondent answered, "I usually do nothing just let it be, if it works out it works out, if not oh well." Although respondent had steady employment and transportation, she slept at the home of relatives, but asserted that she would move into her own place in August 2017. She recognized that housing was an impediment to regaining custody of her children, by stating, "I [sic] not ready to have my kids right now because I don't have my own place. I can't house hop with two kids."

To her credit, respondent completed parenting classes, maintained employment, albeit with different employers, and attended most of the visitations. However, it did not appear that she benefited from services. During the visits, she did not necessarily engage the children. Furthermore, the foster parents noted that KAJ regressed following his visits; he cursed, spoke about gun violence, and regressed in his potty training. He also acted aggressively to other children, and he became upset and nearly uncontrollable during a medical examination, such that it was recommended that he begin therapy. Furthermore, respondent reportedly recognized the impact of her relationships on her situation, but brought unapproved individuals to visitation. Finally, respondent was charged with uttering and publishing that also prevented her from engaging in visitation for a one-month period. Because of the lack of benefit from the services completed, additional training was provided through Life Skills. However, respondent again failed to benefit or comply with directives. For example, the court questioned respondent's budget and gave respondent a notebook with instructions to keep track of her finances. Yet, she did not initially comply and did not obtain housing. When the court questioned her about her efforts, respondent had only called two of the listings given to her by workers. Furthermore, respondent was driving with a suspended license and failed to pay her tickets to rectify the situation.

Ultimately, DHHS filed a supplemental petition for termination of parental rights. After three days of testimony, the trial court held that respondent made improvements in therapy, but failed to secure housing, failed to meaningfully participate in her children's education, medical and mental health needs, and failed to engage in visitation. The trial court recognized the progress made by respondent, but noted that the improvement was too slow in light of the children's ages and the fact that the children were in care for nearly two years. The trial court found that the statutory grounds for termination were satisfied. At a separate hearing, the trial court found that termination of respondent's parental rights was in the children's best interests.

On appeal, respondent asserts that the court erred in finding the statutory grounds were established because she had substantially completed her parent-agency agreement. Respondent also submits that the court erred in finding termination was in the best interests of the children because she had made substantial progress since the filing of the petition and should have had the opportunity to continue with services in order to regain custody of her children. We disagree.

## II. APPLICABLE LAW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id*.; see also MCR 3.977(K). Once a statutory ground for termination has been established, the

trial court must conclude that termination of parental rights is in the child's best interests before it can terminate parental rights. MCL 712A.19b(5); *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A trial court's decision regarding a child's best interests is also reviewed for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 491.

## III. STATUTORY GROUNDS

The trial court properly found that MCL 712A.19b(3)(c)(*i*) was satisfied. This subsection provides that a court may terminate parental rights if it finds, by clear and convincing evidence, the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

On the basis of the evidence and testimony at trial, the trial court found that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*) because there was no reasonable likelihood that the conditions that brought KAJ and BNG into care would be rectified in a reasonable time, considering that the children had been in care for two years. The initial dispositional order was issued on April 19, 2017, and the court found that the conditions of (c)(*i*) were established on April 2, 2019. The time elapsed between those two dates is 713 days. Therefore, "182 days or more have elapsed since the issuance of an initial dispositional order" under MCL 712A.19b(3)(c). The trial court expressed concern with the fact that although respondent had made some progress, the children had been removed from her care for two years. The children needed permanency, and respondent's slow-moving progress did not demonstrate that she could provide permanency for the children in a reasonable amount of time, given the duration of time in placement with the foster parents.

In addition, the facts that led to the children's placement in care were the dangerous living environment and the harm to the children's well-being. The court cited the evidence that until very late in the case, respondent continued to have "housing instability and failed to meaningfully participate in her children's educational plans or their medical and mental health needs." The court was particularly concerned with respondent's failure to attend visitation with her children, and she was not engaged in the visits she did attend. She also did not attend KAJ's trauma assessment or learn about potential education classes. In addition, although it was not a requirement of the parent-agency agreement, respondent failed to rectify her parking tickets and continued to drive with a suspended license. Finally, respondent brought unauthorized individuals to parenting time visits on more than one occasion. The reasons for the children being in care at the outset of this case, including respondent's failure to provide a suitable living environment and danger to the children's well-being, were not rectified by the close of this case. Given the length of time that

-3-

the children had been in care, it was highly unlikely that the conditions would be rectified in a reasonable amount of time. The trial court did not clearly err in terminating respondent's parental rights under this subsection.[1]

## IV. BEST INTERESTS

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. All available evidence should be weighed to determine the child's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The best interest determination focuses on the child rather than the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). The factors to consider when determining the child's best interests include the child's bond to the parent, the parent's parenting skills, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, and the child's placement with relatives. *Id*. If the best interests of the individual significantly differ, the trial court should consider each child individually when making the determination regarding best interests. *In re White*, 303 Mich App at 715-716.

The trial court found that it was in the best interests of the children to terminate respondent's parental rights. Specifically, the trial court stated that respondent failed to benefit from the various services that were provided to her. The court found that respondent was unable or unwilling to provide the children with the security and stability that they needed. The court also considered respondent's strained relationship with the children, evidenced by KAJ's behavioral issues following their visits, and noted that respondent failed to communicate or participate with KAJ's school and therapist. The children had been in foster care for "a significant period of time," and the court found that respondent "materially failed" to demonstrate that she was capable of providing the children with consistent and adequate parental care.

While it is true that, throughout the case, respondent did make some progress, she did not demonstrate that she was willing or able to provide permanency and stability to her children. She failed to secure housing, and she failed to attend many of the parenting time visits, contrary to the

---

[1] Only one statutory ground need be established by clear and convincing evidence to support termination of a respondent's parental rights. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). Nonetheless, the same evidence supported termination pursuant to MCL 712A.19b(3)(g) (failure to provide proper care or custody and will not be able to do so within a reasonable time) and (3)(j) (likelihood child will be harmed if returned to the home of the parent). A parent must not only participate in services, she must demonstrate a benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 508 (2014). Despite the gun fire incident that prompted the children's removal from her care, respondent continued to associate with unauthorized individuals. She participated in services, but did not appear to benefit from them. Respondent continued to miss visitation or did not engage the children during the visits. She was given a list of potential housing opportunities, but only secured housing just prior to the conclusion of the case. Furthermore, she only secured furniture for herself and did not have bedding for the children. Therefore, the trial court did not err in its finding that there was clear and convincing evidence to support all three grounds for termination.

-4-

parent-agency agreement. The court advised respondent to attend every parenting time visit and to engage with the children's education and mental health needs, but respondent failed to do either. Respondent's lack of meaningful participation is "evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App at 710. Respondent argues that she should have been given more time to participate in services and demonstrate that she should have custody of her children. However, the children had been placed in care for nearly two years and deserved permanency and stability. We conclude that the trial court did not clearly err in finding that it was in the children's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel